| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF HORRY | ) | |
| Vincent Grimmage | ) | CIVIL ACTION COVERSHEET |
| Plaintiff(s) | ) | |
| | ) | 16-CP-26-5252 |
| vs. | ) | |
| JK Moving & Storage, Inc. d/b/a JK Moving Services and Vicente Ascencio | ) | |
| Defendant(s) | ) | |

Submitted By: Jacob D. Born
Address: Chappell Smith & Arden
P.O. Box 12330
Columbia, SC 29211

SC Bar #: 100026
Telephone #: 803-929-3600
Fax #: 803-929-3604
Other:
E-mail: jborn@csa-law.com

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (Check all that apply)
*If Action is Judgment/Settlement do not complete

☒ JURY TRIAL demanded in complaint.   ☐ NON-JURY TRIAL demanded in complaint.
☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (Check One Box Below)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Conversion (310) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☒ Motor Vehicle Accident (320) | ☐ Condemnation (410) |
| ☐ General (130) | ☐ Medical Malpractice (220) | ☐ Premises Liability (330) | ☐ Foreclosure (420) |
| ☐ Breach of Contract (140) | Previous Notice of Intent Case # | ☐ Products Liability (340) | ☐ Mechanic's Lien (430) |
| ☐ Fraud/Bad Faith (150) | 20___-NI-___ | ☐ Personal Injury (350) | ☐ Partition (440) |
| ☐ Failure to Deliver/ Warranty (160) | ☐ Notice/ File Med Mal (230) | ☐ Wrongful Death (360) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Assault/Battery (370) | ☐ Building Code Violation (460) |
| ☐ Employment Discrim (170) | | ☐ Slander/Libel (380) | ☐ Other (499) |
| ☐ Employment (180) | | ☐ Other (399) | |
| ☐ Other (199) | | | |

| Inmate Petitions | Administrative Law/Relief | Judgments/Settlements | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Reinstate Drv. License (800) | ☐ Death Settlement (700) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Judicial Review (810) | ☐ Foreign Judgment (710) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Relief (820) | ☐ Magistrate's Judgment (720) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Permanent Injunction (830) | ☐ Minor Settlement (730) | ☐ Municipal (930) |
| | ☐ Forfeiture-Petition (840) | ☐ Transcript Judgment (740) | ☐ Probate Court (940) |
| | ☐ Forfeiture—Consent Order (850) | ☐ Lis Pendens (750) | ☐ SCDOT (950) |
| | ☐ Other (899) | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Public Service Comm. (990) |
| | | ☐ Confession of Judgment (770) | ☐ Employment Security Comm (991) |
| Special/Complex /Other | | ☐ Petition for Workers Compensation Settlement Approval (780) | |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | ☐ Other (999) |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | ☐ Other (799) | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| ☐ Sexual Predator (510) | ☐ Pre-Suit Discovery (670) | | |

Submitting Party Signature: /s/ Jacob Born    Date: 08/12/2016

FILED 2016 AUG 12 LANIE CLERK HORRY COUNTY

SCCA / 234 (12/2015)    Page 1 of 2

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

Effective January 1, 2016, Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

Pursuant to the ADR Rules, you are required to take the following action(s):

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

Please Note:    You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.

STATE OF SOUTH CAROLINA  
COUNTY OF HORRY

Vincent Grimmage,

        Plaintiff,

vs.

JK Moving & Storage, Inc. d/b/a JK Moving Services and Vicente Ascencio,

        Defendants.

IN THE COURT OF COMMON PLEAS  
CIVIL ACTION NO.: 16-CP-26-5252

**AMENDED SUMMONS**  
**(JURY TRIAL REQUESTED)**

FILED  
HORRY COUNTY  
2016 AUG 17 PM 3:04  
MELANIE HUGGINS-WARD  
CLERK OF COURT

TO: JK MOVING & STORAGE, INC. D/B/A JK MOVING SERVICES AND VICENTE ASCENCIO, THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to said complaint upon the subscriber, at his office at 1510 Calhoun Street, Columbia, South Carolina 29201, within thirty (30) days after the service thereof, exclusive of the day of such service, and if you fail to answer the complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the complaint.

        CHAPPELL, SMITH & ARDEN, P.A.

        */s/*

        W. Hugh McAngus, Jr.  
        Jacob D. Born  
        Attorneys for the Plaintiff  
        Post Office Box 12330  
        Columbia, South Carolina 29211  
        (803) 929-3600

STATE OF SOUTH CAROLINA  
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS  
CIVIL ACTION NO.: 16-CP-26-5252

Vincent Grimmage,

        Plaintiff,

vs.

JK Moving & Storage, Inc. d/b/a JK Moving Services and Vicente Ascencio,

        Defendants.

**AMENDED COMPLAINT**  
**(JURY TRIAL REQUESTED)**

FILED  
HORRY COUNTY  
MELANIE HUGGINS-WARD  
CLERK OF COURT  
2016 AUG 17 PM 3: 04

The Plaintiff would respectfully show unto the Court that:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Vincent Grimmage is a citizen and resident of the County of Georgetown, State of South Carolina.

2. Upon information and belief, Defendant JK Moving & Storage, Inc., doing business as JK Moving Services (hereinafter "JK Moving") is a corporation organized under the laws of Virginia with its principle place of business located in the County of Loudoun, State of Virginia, and maintains a registered agent for service of process in CT Corporation System at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

3. Upon information and belief, Defendant Vicente Ascencio (hereinafter "Ascencio") is a citizen and resident of the County of Loudoun, State of Virginia.

4. Upon information and belief, Defendant JK Moving is a commercial motor carrier bearing the US DOT number 1065394 and MC number 196957.

## FACTUAL BACKGROUND

5. On or about January 20, 2016, Defendant Ascencio was operating a commercial motor vehicle traveling south on South Carolina Highway 17 near Surfside Beach, South Carolina.

6. Upon and information and belief and at all times relevant to this Complaint, Defendant Ascencio was operating the commercial vehicle under Defendant JK Moving's authority and within the scope of his employment with JK Moving.

7. At the same time and place above, Plaintiff was at a complete stop waiting for traffic ahead directly in front of Defendant Ascencio when Defendant Ascencio struck the rear end of Plaintiff's vehicle. Defendant Ascencio then struck another commercial motor vehicle in front of the of the Plaintiff, and then sped away until he collided with a roadside ditch, which ultimately brought Defendant Ascencio and the Defendant JK Moving commercial motor vehicle to a complete stop.

8. At all times relevant to this Complaint, Plaintiff did not contribute to the collision as he was at a complete stop at the time of impact.

9. At all times relevant to this Complaint, no unidentified third party contributed to the collision.

10. At all times relevant to this Complaint, there were no obstructions between the Plaintiff and Defendant Ascencio.

11. At all times relevant to this Complaint, Defendant Ascencio never stopped the Defendant JK Moving commercial motor vehicle after the collision where there was visible property damage.

12. At all times relevant to this Complaint, Defendant Ascencio pled guilty to violating S.C. Code Ann. § 56-5-1220 as a direct result of the collision.

13. As a result of the collision, Plaintiff suffered the following injuries and damages:

   a. extensive pain, mental anguish, suffering and discomfort;
   b. permanent injuries and total disability;
   c. money spent for medical care and treatment, past, present and future;
   d. inability to carry on normal activities;
   e. emotional trauma and distress;
   f. loss of enjoyment of life;
   g. permanent inability to perform job duties resulting in lost wages and loss of earning capacity.

**FOR A FIRST CAUSE OF ACTION**
**Against Defendant Vincente Ascencio**
**(Negligence)**

15. Plaintiff repeats and realleges as if verbatim paragraphs 1-13.

16. At all times relevant to this Complaint, Defendant Ascencio was operating a commercial motor vehicle transporting property in interstate or intrastate commerce.

17. In order to undertake such actions, Defendant Ascencio must have the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

18. The safe operation of commercial motor vehicles requires specialized knowledge and additional training, not necessary for the safe operation of passenger vehicles because:

   a.     commercial motor vehicles are heavier than passenger vehicles

and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;

b. commercial motor vehicles are heavier and longer than passenger vehicles and take longer to execute turning and lane change maneuvers, as compared to passenger vehicles operating at the same pre-turn or lane change speed;

c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory;

d. commercial motor vehicles pose more of a risk of causing personal injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same pre-collision speed and trajectory; and

e. commercial motor vehicles pose a greater risk of increased injury to passenger vehicle occupants in a head on collision because of the large difference in mass between a commercial vehicle and a passenger vehicle.

19. In order to undertake the safe operation of a commercial motor vehicle, drivers such as the Defendant Ascencio must have knowledge and skills in many areas, including the following:

a. the procedures for safe vehicle operations;

b. the proper procedures for performing basic maneuvers such

   controlling the speed of the commercial vehicle and keeping a proper look out for the condition of traffic ahead;

c.  the importance of conducting a proper visual search;

d.  the importance of proper visual search methods, including seeing ahead and to the sides;

e.  the principles and procedures for proper communications and the hazards of failing to signal properly, including signaling intent and communicating presence;

f.  the importance of understanding the effects of speed, including speed and visibility and speed and traffic flow; and,

g.  the procedures and techniques for controlling the space around the vehicle, including the importance of space management, space cushions, space to the sides, and space for traffic gaps.

20.  In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to look 12 to 15 seconds ahead to avoid having to stop too quickly or make quick lane changes.

21.  In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to shift their attention back and forth, near and far.

22.  In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to look for brake lights from slowing vehicles because seeing these things far enough ahead allows commercial motor vehicle drivers the opportunity to change speed or lanes if necessary to avoid a

problem.

23. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to adjust their speed depending on driving conditions, including traction, curves, visibility, and traffic.

24. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to have knowledge of and understand the total stopping distance of their commercial motor vehicle, including perception distance, reaction distance, and brake distance at the relevant speeds of travel.

25. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand the effects of speed and vehicle weight on stopping distance.

26. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, prudent commercial motor vehicle drivers understand the need for a space cushion ahead because the vehicle that commercial trucks or buses most frequently run into is the one in front of them.

27. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, prudent commercial motor vehicle drivers understand the need for a space cushion ahead because the most frequent cause of commercial trucks or buses running into the vehicle in front of them is following too closely.

28. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, prudent commercial motor vehicle drivers keep at least one second for each 10 feet of vehicle length plus one second at speeds above 40 mph between their vehicle and the vehicle in front of them.

29. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, prudent commercial motor vehicle drivers understand that drivers signaling a turn may slow more than expected or stop.

30. The injuries and damages incurred by the Plaintiff were directly and proximately caused by the Defendant Ascencio's careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars:

   a. in failing to apply the brakes of the vehicle and/or maintain them in proper working condition;

   b. in failing to steer or take other evasive action so as to avoid the collision;

   c. in failing to keep a proper lookout;

   d. in failing to yield as required by law;

   e. in operating the vehicle too fast for existing conditions;

   f. in failing to observe the condition of traffic;

   g. in operating a commercial motor vehicle when he was not qualified to do so;

   h. in failing to follow the proper procedures for safe commercial vehicle operations;

   i. in failing to conduct a proper visual search;

   j. in failing to account for his vehicle's speed and its effect of visibility and traffic flow;

   k. in failing to properly control the space around his vehicle, including failing to maintain a proper space cushion, proper space to

the front, or proper space to allow for slower or turning vehicles;

l. in failing to understand and/or account for his vehicle's total stopping distance at the Defendant's particular speed;

m. in failing to look 12 to 15 seconds ahead such that Defendant Lloyd should have seen the turning vehicle in time to avoid a sudden stop or lane change maneuver;

n. in failing to shift his attention back and forth, near and far, so as to see the vehicle turning ahead and avoid a sudden braking or lane change maneuver;

o. in colliding with the rear of the vehicle in front of him, which resulted in a multi-vehicle collision on the Interstate Highway;

p. in failing to stop after a collision where there were visible property damage;

q. in failing to stop after a collision where the other individuals involved in the collision were visibly injured;

r. in violating S.C. Code Ann. § 56-5-1220.

31. Defendant Ascencio's careless, negligent, willful, wanton, reckless and unlawful acts were the direct and proximate cause of the collision and resulting injuries and damages to the Plaintiff.

32. Plaintiff is informed and believes that he is entitled to judgment against Defendant Ascencio for actual and punitive damages in an appropriate amount.

## FOR A SECOND CAUSE OF ACTION
### Against Defendant JK Moving & Storage, Inc. d/b/a JK Moving Services
### (Negligence)

33. Plaintiff repeats and realleges as if verbatim paragraphs 1-32.

34. Upon Information and belief, Defendant JK Moving operates as a commercial motor carrier.

35. In return for the privilege of operating commercial motor vehicles on public roadways, prospective motor carriers must make certain safety related certifications and verifications.

36. Motor carriers such as the Defendant JK Moving is required to submit a Form MCS-150 to the Federal Motor Carrier Administration and obtain a USDOT number.

37. Each Form MCS-150 Defendant JK Moving is required to submit contains a Certification Statement whereby Defendant declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations.

38. Motor carriers such as Defendant is also required to submit a Form OP-1 to the Federal Motor Carrier Administration to gain operating authority.

39. The Form OP-1 that Defendant JK Moving was required to submit contains a "Safety Certification," which require JK Moving Supply to certify to the following:

   a. Defendant is subject to the pertinent portions of the US DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3, Subchapter B (Parts 350-399);

   b. Defendant has access to and is familiar with all applicable US DOT regulations relating to the safe operation of commercial vehicles;

   c. Defendant will comply with the US DOT regulations;

d. Defendant has in place a system and individual responsible for ensuring overall compliance with the FMCSR;

e. Defendant can produce a copy of the FMCSR;

f. Defendant has in place a driver safety training/orientation program;

g. Defendant is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements;

h. Defendant has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles;

40. To be qualified to operate a commercial motor vehicle, a driver must have experience and/or training to safely operate the type of vehicle, be physically qualified, have a currently valid CDL, and furnish to the motor carrier a list of current driving violations.

41. To be qualified to operate a commercial motor vehicle, a driver is also required to complete a written application containing the following information:

a. The nature and extent of the driver's experience;

b. A list of all accidents in the previous 3 years;

c. A list of all violations of motor vehicle laws in the previous 3 years;

d. A detailed description of any denial, revocation, or suspension of any drivers licenses or permits

42. Before a motor carrier may allow or permit a driver to operate a commercial motor vehicle, the motor carrier must:

a. Obtain the driver's motor vehicle record from the applicable state agency for the previous 3 years; and

   b. Investigate the driver's safety performance history with all DOT regulated employers for the previous 3 years.

43. Once motor carriers such as the Defendant JK Moving hires a commercial driver, every twelve months thereafter, the driver must submit a written list of all traffic violations the driver received over a twelve month period.

44. Once a motor carrier such as the Defendant JK Moving hires a commercial driver, every twelve months thereafter, the motor carrier must obtain from the relevant state agency a list of traffic violations for the previous year and maintain a copy of the record in the driver's qualification file.

45. In addition, drivers employed by, or operating under the direction of, motor carriers such as Defendant JK Moving, is required to complete and turn in to their employer trip envelopes at least every 13 days. Such trip envelopes include, but are not limited to, the driver's daily logs and pre-trip and post-trip vehicle inspection reports.

46. Drivers' daily logs record how much time each driver spends on duty, on duty not driving, off duty, and in a sleeper birth. Driver logs also require drivers to indicate how many miles they drove during each 24 hour period and their locations at each change of duty status.

47. In addition to the required daily logs and vehicle inspection reports, prudent motor carriers also collect information from their drivers, such as fuel receipts, entry and departure records, and other supporting documentation that verifies the times that their drivers were at specific locations.

48. Prudent motor carriers use the information contained in the required daily driver logs, vehicle inspection reports, and other supporting documents to audit the performance of their drivers.

49. Prudent motor carriers use the information contained in the required daily driver logs, vehicle inspection reports, and other supporting documentation to audit the performance of their drivers to ensure that their drivers are not violating hour of service rules, to ensure that their drivers do not average speeds in excess of what is safe, and otherwise verify that the information contained in the driver's logs is accurate and truthful.

50. Auditing drivers' daily logs, vehicle inspection report, and supporting documents increases the likelihood that a motor carrier's drivers are operating their commercial vehicles safely and decreases the risk of a preventable crash.

51. Prudent motor carries do not allow or permit a driver to operate their commercial motor vehicles if the driver is not qualified to do so.

52. Prudent motor carriers do not allow or permit a driver to operate their commercial motor vehicles if an audit of the driver's logs, vehicle inspection reports, and supporting documents indicates that the driver has a higher than safe average speed.

53. Prudent motor carriers do not allow or permit a driver to operate their commercial motor vehicles if an audit of the driver's logs, vehicle inspection reports, and supporting documents indicates that the driver operates his vehicle in violation of the hours of service rules.

54. Prudent motor carriers do not allow or permit a driver to operate their commercial motor vehicles if an audit of the driver's logs, vehicle inspection reports, and

supporting documents indicates that the driver is not accurate and truthful in the completion of his logs.

55. Prudent motor carriers do not allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

56. The injuries and damages incurred by Plaintiff were directly and proximately caused by Defendant JK Moving's careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars:

    a. Hiring, training, supervision, and retention of its drivers, employees, and/or agents, specifically, Defendant Ascencio;

    b. Entrustment of a tractor trailer to its drivers, employees, and/or agents, specifically, Defendant Ascencio;

    c. Failing to comply with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

    d. Improperly auditing the logs of its drivers, employees, and/or agents, specifically Defendant Ascencio;

    e. Failing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Ascencio, for compliance with company policies and/or state and federal regulations;

    f. Allowing Defendant Ascencio to operate a commercial motor vehicle despite

57. Plaintiff is informed and believes that he is entitled to judgment against Defendant JK Moving for actual and punitive damages in an appropriate amount.

### FOR A THIRD CAUSE OF ACTION
### Against Defendant JK Moving & Storage, Inc. d/b/a JK Moving Services
### (Respondeat Superior)

58. Plaintiff repeats and realleges as if verbatim paragraphs 1-57.

59. At all times relevant to the allegations contained in this Complaint, Defendant Ascencio was working in the course and scope of his employment for Defendant JK Moving, or was otherwise acting as an agent or servant of the Defendant JK Moving.

60. The Defendant JK Moving is liable for the acts and omissions of the Defendant Ascencio under the doctrines of respondeat superior, master/servant, and/or agent/principal.

61. The Plaintiff is informed and believes that he is entitled to judgment against the Defendants for actual and punitive damages in an appropriate amount.

WHEREFORE, Plaintiff prays for judgment against Defendant JK Moving and Defendant Vincente Ascencio for actual and punitive damages in an appropriate amount to be determined at trial, the costs of this action, and for such other and further relief as the Court may deem just and proper.

CHAPPELL, SMITH & ARDEN, P.A.

W. Hugh McAngus, Jr.
Jacob D. Born
1510 Calhoun Street
Post Office Box 12330
Columbia, South Carolina 29211
(803)929-3600
**Attorneys for Plaintiff**